IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOSE SANCHEZ
   Petitioner,

VS.

JOHN ASHCROFT,
Attorney General of the United
States, and Bureau of
Citizenship and Immigration
Services
   Respondent,

INS NO.: A36-917-445

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND
PETITION FOR WRIT OF
HABEAS CORPUS  MAGISTRATE JUDGE Cohen

PETITION FOR STAY OF
DEPORTATION

04 10113 RCL

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR WRIT OF HABEAS CORPUS

NOW COMES, the Petitioner, **JOSE SANCHEZ**, by and through his Attorney of Record, Robert E. Craven, to file this complaint pursuant to 28 USC §1331, 28 USC §2241, 5 USC §551 et seq., 28 USC §§2201 et seq., and the All Writs Act. 28 USC §1651 for declaratory and injunctive relief, to protect Petitioner's rights under the Due Process Clause of the Fifth Amendment to the Constitution and applicable Federal Law, and to issue a writ of habeas corpus, and enjoin Petitioner's removal from the United States. In support of this petition, Petitioner states as follows:

### JURISDICTION AND VENUE

1. This action arises under the Constitution, and the Immigration & Nationality Act of 1952, as amended (INA), 8 USC §1101 et seq., and the Administrative Procedure Act (APA), 5 USC §701 et seq. This Court has habeas jurisdiction pursuant to 28 USC § 2241, Art. 1, §9, Cl. 2 of the United States Constitution (the "Suspension Clause"); and the common law. This Court may also exercise jurisdiction pursuant to 28 USC §1331 and may grant relief pursuant to the Declaratory Judgment Act, 28 USC §2201 et seq., and the All Writs Act, 28 USC §1651.

2. Venue lies in the United States District Court for the District where Petitioner's currently being held; he is currently imprisoned by the Bureau of Citizenship and Immigration Services at the Bristol House of Corrections in Dartmouth, Massachusetts. Venue is thus proper, as all future removal proceedings will take place within this jurisdiction.

**PARTIES**

3. Petitioner, **JOSE SANCHEZ**, is a native citizen of Panama, and is currently being held in the Bristol County House of Corrections in Dartmouth, Bristol County, Massachusetts.

4. Respondent, **JOHN ASHCROFT**, Attorney General of the United State and the Bureau of Citizenship and Immigration Services (hereinafter BCIS) have jurisdiction over the Petitioner and his removal proceedings.

**STATEMENT OF FACTS**

5. Petitioner is a native and citizen of Panama. He first entered the United States back in 1983.

6. On February 27, 1984 he was arrested and charged with possession of cocaine. He plead Nolo to the charge on April 11, 1984 and received probation. He never served any jail time for said offense.

7. At the time of sentencing, Mr. Sanchez was never informed by his attorney that his nolo plea could have immigration consequences, in particular, the likelihood of deportation.

8. In 1985 Mr. Sanchez was initially served with deportation papers and received a hearing in Federal Court in Massachusetts. Mr. Sanchez was not represented at said hearing and was unable to effectively persuade the Immigration Judge that he was unaware that his plea had deportation consequences. Subsequently, Mr. Sanchez voluntarily departed the United States.

9. Mr. Sanchez later reentered the United States in 1987, where he remained until 1991 when he once again voluntarily departed the United States.

10. Mr. Sanchez was absent from the United States from 1991 until his latest reentry in 2001. Mr. Sanchez was arrested by the INS on August 12, 2003 and has been detained at the Bristol House of Corrections since.

11. As previously alluded to, Mr. Sanchez voluntarily departed the united States, and as such, never filed any administrative appeals.

12. If Mr. Sanchez is ordered deported he faces immediate and irreparable injury or loss, based on his serious health condition and is in need of a liver transplant. Mr. Sanchez, if deported, will not receive the necessary medical treatment he needs to continue living. Furthermore, Panama's medical facilities do not perform liver transplants.

13. At the time of filing of this brief, counsel is awaiting documentation from the Panamanian health system that there physicians do not perform liver transplants.

14. Mr. Sanchez's constitutional rights to Due Process and Right to Council were violated by the actions or inactions of his prior attorney to fully inform him with respect to deportation consequences.

15. Mr. Sanchez hired new counsel on August 13, 2003 to represent his interests and exhaust all remedies afforded him under the Constitution of the United States.

**LEGAL BACKGROUND**

16. Although it is conceded that the 1996 changes pursuant to the Illegal Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") severely limited judicial review of immigration decisions, several circuit courts throughout the nation, have recently concluded that neither IIRIRA's transitional rules nor its permanent rules repeal general habeas jurisdiction pursuant to §2241. See, e.g., *Lee v. Richard Rodgers, Immigration and Naturalization Service,* 2000 U.S. App. LEXIS 29819, citing *Barapind v. Reno,* 225 F. 3d. 1100, 2000 WL 1210050, at 1,8 (9th Cir. 2000); *Flores-Miramontes v. INS,* 212F. 3d 1136-38 (9th Cir. 2000); *Magana-Pizano v. INS,* 200 F. 3d. 603, 609 (9th Cir. 1999).

17. §2241 habeas review extends to both constitutional and statutory claims. *Magana-Piazo* at 609. Habeas review in immigration cases is not limited to criminal aliens or to those in actual physical INS custody. *Sulit v. Schiltgen,* 213 F. 3d. 449, 452-53 (9th Cir. 2000) (reviewing under §2241 due process and equitable estoppel claims of non-criminal alien not in physical custody of the INS).

18. It is well settled that the Fifth Amendment entitles an alien to due process of law in a removal proceeding. *Reno v. Flores,* 507 U.S. 292, 306, 123 L.Ed. 2d 1, 113S. CT. 1439 (1993); also, *Felzcerek v. Immigration and Naturalization Service,* 75F. 3d. 112, 115 (2nd Cir. 1996). While "a [removal] hearing is a civil matter, and the heightened procedural protections of a criminal trial are not necessarily constitutionally required," id. (Internal quotations and citation omitted), such a hearing must nevertheless be fundamentally fair. *Iavorski v. United States Immigration and Naturalization Service,* 232F. 3d. 124, 128 (2nd Cir. 2000). However, to prevail on a due process claim, a petitioner must present concrete evidence that a violation "had the potential for affecting the outcome of the removal proceedings." *Diaz v. Immigration and Naturalization Service,* 00Civ. 8273, 2001 Wl 69425, at 2 (S.D.N.Y. Jan. 29,

2001); *United States v. Gonzales-Mendoza*, 985 F. 2d 1014,1017 (9th Cir. 1993).

19. In Petitioner's case, he has been denied due process of law through(1) the ineffectiveness of the attorney which he handled his criminal case, and (2) the complete subversion of Petitioner's right to mount a full competent defense. These actions have placed Mr. Sanchez in jeopardy, and have stripped him of his right to defend himself against this deportation and removal.

## FIRST CLAIM FOR RELIEF
### (Substantive and Procedural Due Process Violations)

20. Petitioner realleges and incorporates by reference each and every allegation in the paragraphs 1 through 19 as if set forth fully herein.

21. Mr. Sanchez's Attorney who represented him with respect to his criminal charge and Nolo plea failed to provide him with effective representation pursuant to the 6th Amendment of the Constitution and the standard enunciated by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court ruled that an individual is entitled to effective assistance of counsel.

22. It also meets the requirements of *Diaz v. Gonzales-Mendoza* in that it was a violation that has the potential for affecting the outcome of the removal proceedings, due to the fact that if he was fully informed, Mr. Sanchez may have very well decided on a different course of action with regards to his Nolo plea.

## SECOND CLAIM FOR RELIEF
### ( Motion for Stay of Deportation)

### THE STAY OF DEPORTATION SHOULD BE GRANTED IF SERIOUS QUESTIONS ARISE, AND HARDSHIP TIPS IN PETITIONER'S FAVOR

23. Petitioner realleges and incorporates by reference each and every allegation in the paragraphs 1 through 22 as if set forth fully herein.

24. Although there is some dispute regarding the standard which is applied for stays, the BCIS (formerly INS) contends that such cases are decided according to the standard for preliminary injunctions. To obtain a preliminary injunction, the moving party must show that serious questions are raised, and that the balance of hardship tips strongly in his/her favor. Arthus v. INS., 959 F.2d 142, 143-144 (9thCir. 1992). Additionally, in Bendav.Grand Lodge of International Association of Machinists [584 F.2d 308,

314-315 (9th Cir. 1978)], that Court stated that if the balance of hardship tips decidedly toward petitioner, the second element requires only either a "fair chance of success on the merits" or "questions..serious enough to require litigation." Id. At 315.

25. In this case, the level of hardship present on the petitioner is great. The new changes in IIRIRA require that any individual who has remained within the United States for a period of one year or longer in a state of illegality be barred from re-entering the United States for a period of ten (10) years, despite the availability of a visa. INA §212(a)(9)(B)(i)(II). Thus, if Petitioner were to leave the United States, he would automatically be barred from re-entering for 10 years, despite any later judicial review or changes in the law. Moreover, any absence from the United States would terminate Petitioner's ability to (1) assess the potential invalidity of his 1984 Nolo plea, and (2) reassert his rights in a new hearing before the Immigration Court; indeed, if the 1985 order is found to be unlawful, in that it was issued in violation of Mr. Sanchez's due process rights, he must be afforded a new trial. Such a forced absence would pose a very severe and undue hardship on him, and would indeed terminate all of these above-mentioned rights. A forced absence of at least 10 years would effectively remove this man from a family who loves and needs him, not to mention the fact that he will be unable to obtain a liver transplant that he needs to continue living, and, more importantly, make the issue of the 1984 Nolo plea moot. Indeed, this petition for review does raise a serious question of law, namely a very serious and blatant constitutional violation. Yet, denial of a stay would effectively close the book on the Petitioner; one foot outside of the United States will automatically trigger the ten (10) year bar. More importantly, deporting Mr. Sanchez, is effectively a death sentence, due to the fact the Panama physician will not be able to effectively treat his disease and they do not perform liver transplants.

### THIRD CLAIM FOR RELIEF
(Motion for Stay of Deportation)

### THE STAY OF DEPORTATION SHOULD BE GRANTED
### DUE TO THE PETITIONERS MEDICAL CONDITION

26. Petitioner realleges and incorporates by reference each and every allegation in the paragraphs 1 through 25 as if set forth fully herein.

27. Mr. Sanchez Please find attached report prepared by Dr. Armenio S. Costa, Ph.D. I will defer to Dr. Costa's comments on Mr. Sanchez's psychological state. (See exhibit 1)

28. In addition, Mr. Sanchez currently suffers from alcohol-induced cirrhosis of the liver complicated by ascities and hepatic hydrothorax. As you can see from the attached medical documentation, Mr. Sanchez's medical issues are considered terminal if he does not receive a liver transplant. This prognosis was made by Dr. Samir A. Shah. (See exhibit 2)

29. Furthermore, Mr. Sanchez is currently inactive on the transplant list due to the fact Dr. Stephen Fabry of the Lahey clinic has not evaluated Mr. Sanchez since his last visit in early July. Mr. Sanchez has missed his subsequent appointments due to his incarceration at the Bristol House of Corrections. (See exhibit 3)

30. Furthermore, counsel has been in contact with a Dr. Garcia Majorca, a Panamanian Physician, who has informed this attorney that Mr. Sanchez will not be able to receive a liver transplant in Panama, due to the fact that said transplants are not performed in Panama. Counsel is awaiting documentation to that affect.

31. Since his incarceration Mr. Sanchez's mental and physical health has deteriorated. His health would greatly improve if he was granted a supervised release pending a determination by this Honorable Court. He would be able to obtain the necessary psychological/mental health therapy he is in need of before receiving a possible liver transplant. Additionally, Mr. Sanchez's daughter Rita, who is currently in the U.S. Navy, will be taking a medical leave from the Navy to care for her father post liver transplant.

32. The entire Sanchez family has been affected deeply by their fathers incarceration. The family treats this as thou they have lost another member of their family. The Sanchez's youngest son passed away in 2001 from the same disease that currently affects Mr. Sanchez. The family believes that they may never see him again.

33. Furthermore, from my understanding, Mr. Sanchez is not receiving the care he needs to treat his liver disease while incarcerated at the Bristol House of Corrections. In addition, since his arrest and incarceration, he has not seen his primary care physician nor the specialists that have been monitoring his status. Mr. Sanchez's condition could have significantly worsened since early July when he was last seen by his medical team.

34. As a result of Mr. Sanchez's medical condition, BCIS should be enjoined from effectuating the deportation order since it would result in a violation of his Eighth Amendment Constitutional Rights against cruel and unusual punishment.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Honorable Court grant the following relief:

1. Grant the writ of habeas corpus;

2. Issue an injunction enjoining the Respondent from deporting him;

3. Declare that Petitioner's due process rights have been violated and grant him new hearing;

4. Order the Respondent to release a complete and accurate copy of Petitioner's records to Petitioner's Attorneys of Record, such that the validity of that 1985 deportation order can be studied, and enjoin the Respondent from removing the Petitioner from the United States until that investigation can be completed;

5. Grant any other and further relief that this Honorable Court deems just and proper.


Respectfully submitted,
Attorney for the Petitioner,

*[signature]*
Robert E. Craven, ESQ.
*ROBERT E. CRAVEN & ASSOCIATES*
50 Park Row West, Suite 100
Providence, RI 02903
(401) 453-2700
1-16-04