UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOSE SANCHEZ,            )
                           )
        Petitioner     )
                           )    Civil Action No.
     v.              )    04cv10113-RCL
                           )
JOHN ASHCROFT, ET AL.,   )
                           )
        Respondent    )

### RESPONDENT'S RETURN AND MEMORANDUM OF LAW
### IN OPPOSITION TO MOTION FOR STAY OF DEPORTATION

#### SUMMARY STATEMENT OF CASE

Respondent[1] files the instant return setting out the lawful
basis of petitioner's custody, and opposing the motion for stay
of deportation.  The motion for stay of deportation should be
denied because petitioner's filings fail to demonstrate any

---

[1] The Immigration and Naturalization Service of the United States
Department of Justice was "abolished" by section 471 of the
Homeland Security Act of 2002, Pub. L. 107-296, tit. IV, subtits.
D, E, F, 116 Stat. 2135, 2192 (Nov. 25, 2002) ("HSA").  Most of
the interior enforcement functions of the former INS were
transferred to the Department of Homeland Security ("DHS"),
Directorate of Border and Transportation Security, Bureau of
Immigration and Customs Enforcement.  In addition, HSA section
1512(d) provides that "[r]eferences relating to an agency that is
transferred to the Department in statutes, executive orders,
rules, regulations, directives, or delegations of authority that
precede such transfer or the effective date of this act shall be
deemed to refer, as appropriate, to the Department, to its
officers, employees, or agents, or to its corresponding
organizational units or functions."  It is understood at present
that the responsive successor official of the Bureau of
Immigration and Customs Enforcement ("ICE"), Department of
Homeland Security, in the instant action is Interim Field Office
Director Bruce Chadbourne, of the ICE in Boston, Massachusetts.

1

likelihood of success on the merits, and so fail to meet the stay

standard set out by the First Circuit Court of Appeals in Arevalo

v. Ashcroft, 344 F.3d 1, 9 (1st Cir. 2003)("in sum, we hold that

the applicable standard for evaluating requests for stays pending

review of final orders of removal is the four-part algorithm used

for preliminary injunctions"); Weaver v. Henderson, 984 F.2d 11,

12 (1st Cir. 1993)(the "sine qua non" of the preliminary

injunction test is whether the movant is likely to succeed on the

merits); Lancor v. Lebanon Hous. Auth., 760 F.2d 361, 362 (1st

Cir. 1985) ("[o]f these four factors, the probability-of-success

component in the past has been regarded by us as critical in

determining the propriety of  injunctive relief").

Petitioner has failed entirely to demonstrate any likelihood

of success on the merits of the claims made in his motion and

petition because petitioner makes *no* challenge at all to the

lawfulness of the July 8, 1999 final order of deportation

scheduled to be enforced against him on **January 26, 2004.**[2]

Petitioner raises instead two unrelated claims, neither of which

directly implicates the validity or legal enforceability of the

final order of deportation entered by the Board of Immigration

Appeals ("BIA") on July 8, 1999. See ARGUMENT, Part III, infra.

Although under Carranza v. INS, 277 F.3d 65, 71 (1st Cir.

2002), habeas review may exist in some cases for review of a

removal or deportation order under 28 U.S.C. § 2241 for pure
issues of law, petitioner does not assert *any* error or legal flaw
in the BIA's July 8, 1999, deportation order, and instead seeks
to circumvent the section 2254 habeas corpus requirements for
review of a 19 year old state conviction by simply couching his
claim in terms of a motion for stay of deportation.  Petitioner
advances no authority for his position, and respondent is unaware
of such authority.  See e.g. Drakes v. INS, 330 F.3d 600 (3rd
Cir. 2003) (recognizing a "bar in a section 2241 habeas
proceeding [to] a collateral attack on a prior state conviction
where the conviction serves as a predicate for an order of
removal.").

CASE BACKGROUND AND FACTS

Petitioner is a native and citizen of Panama who was
admitted to the United States as a Lawful Permanent Resident on
August 6, 1979.  On April 11, 1984, petitioner was convicted in
Providence Superior Court, Providence, Rhode Island, of the
offense of possession of cocaine.

By administrative Order to Show Cause dated March 13, 1985,
petitioner was charged with being deportable under prior 8 U.S.C.
§ 1251(a)(11) as an alien convicted of a controlled substance
offense.  Petitioner was represented in deportation proceedings
by counsel, John F. McBurney III, who denied deportability, and

---

[2] Petitioner inaccurately asserts the scheduled deportation date

3

argued that petitioner had not been "convicted" of the offense.
The Immigration Judge disagreed, and on May 28, 1985, ordered
petitioner deported to Panama.  No appeal was taken
administratively or judicially by petitioner, and the deportation
order became final, terminating petitioner's lawful permanent
resident status.  On October 26, 1985, petitioner departed the
United States, effecting his deportation.[3]

Some 5 months after his deportation, in March 1986,
petitioner re-entered the United States illegally without
inspection through the Mexican border.  Petitioner then came to
the attention of the INS, was arrested, and an administrative
Order to Show Cause was issued dated October 5, 1990, charging
petitioner with deportability under former 8 U.S.C. §§ 1251(a)(2)
for having entered the United States without inspection, and
1251(a)(1) for having entered the United States as an excludable
alien under former 8 U.S.C. § 1182(a)(23) (alien inadmissible as
one convicted of a controlled substance offense).

Deportation proceedings began for the second time before an
Immigration Judge, with petitioner being represented by attorney
Mark Galvin.  Petitioner denied the deportation charge that was

---

as January 22, 2004.
[3] Any departure from the United States after entry of a final
order of deportation, whether the departure is enforced by the
government or independently volitional by the deportee, is a
deportation. 8 U.S.C § 1101(g).  Although petitioner
characterizes his departure as "voluntary" -- perhaps in the

4

based upon the April 11, 1984 controlled substance conviction,
arguing that the disposition was not a "conviction" under
immigration law.  Petitioner indicated to the Immigration Court
that he had filed for post-conviction relief in the Rhode Island
courts on October 31, 1989, under R.I.G.L. §§ 10-9.1-1 et seq.
(Post Conviction Remedy Act), had been denied that relief, and
had appealed that denial to the Rhode Island Supreme Court.  The
basis of the petition for post conviction relief was that an
alleged failure of defense counsel to advise petitioner of the
immigration consequences of his nolo plea in the April 11, 1984,
controlled substance conviction amounted to an ineffective
assistance of counsel constituting a violation of the Sixth
Amendment. See Attachment A.

     The Immigration Judge granted two continuances in the
deportation case, but ultimately determined that the April 11,
1984 Rhode Island conviction was final for immigration purposes,
and on April 23, 1991, the Immigration Judge ordered petitioner
deported to Panama. See Attachment C.  Petitioner appealed the
deportation order administratively to the Board of Immigration
Appeals ("BIA"), which dismissed the appeal by decision dated
July 8, 1999.  See Attachment B.  Petitioner failed to seek

---

sense that it was not executed by INS officers -- it was a
deportation legally just the same.

prescribed judicial review of the deportation order at the First

Circuit Court of Appeals.   See IIRIRA[4] section 309(c)(4)(C)[5].

Petitioner was taken into custody by the Bureau of

Immigration and Customs Enforcement ("ICE") on August 12, 2003.

Petitioner has now been cleared for deportation, which is

scheduled for **January 26, 2004**.  Respondent also files herewith

its Notice of Intent to Execute Deportation Order on **January 26,**

**2004.**

ARGUMENT

I.    THE DISTRICT COURT HAS SUBJECT MATTER JURISDICTION TO
      REVIEW ONLY COLORABLE CLAIMS OF LEGAL ERROR IN PROPERLY
      COGNIZABLE HABEAS CORPUS PROCEEDINGS.

In INS v. St. Cyr, 121 U.S. 2271, 2285 (2001) the Supreme

Court answered the question, already resolved in the affirmative

in the First Circuit by Mahadeo v. Reno, et al., 226 F.3d 3 (1st

Cir. 2000), whether habeas corpus jurisdiction exists for review

---

[4] Illegal Immigration Reform And Immigrant Responsibility Act of
1996, enacted as Division C of the Departments of Commerce,
Justice, and State, and the Judiciary Appropriations Act for
1997,  Pub. L. No. 104-208, 110 Stat. 3009, ___ ( enacted Sept.
30, 1996) ("IIRIRA").

[5] IIRIRA section 309(c)(4)(C) provides that a petition for
judicial review must be filed "not later than 30 days after the
date of the final order of exclusion or deportation", and IIRIRA
section 309(c)(4)(D) provides that a petition for judicial review
"shall be filed with the court of appeals for the judicial
circuit in which the administrative proceedings before the
[immigration judge] were completed". The instant petitioner's
deportation hearing was completed before an Immigration Judge in
Boston, Massachusetts, therefore his statutorily prescribed
avenue for judicial review was to the First Circuit Court of
Appeals.

of pure issues of law in challenges to final orders of removal.[6]
"In sum," wrote Justice Stevens, "even assuming that the
Suspension Clause protects only the writ as it existed in 1789,
there is substantial evidence to support the proposition that
pure questions of law like the one raised the respondent in this
case could have been answered in 1789 by a common law judge with
power to issue the writ of habeas corpus." St. Cyr at 2282.

The Supreme Court, however, drew a sharp distinction between
review of cases presenting pure law questions, and review of
other, fact-bound, or discretionary cases.  The Court recognized
that St. Cyr's "application for a writ of habeas corpus raises a
pure question of law.  He does not dispute any of the facts that
establish his deportability or the conclusion that he is
deportable.  Nor does he contend that he would have any right to
have an unfavorable exercise of the Attorney General's discretion
reviewed in a judicial forum.  Rather, he contests the Attorney
General's conclusion that, as a matter of statutory
interpretation, he is not eligible for discretionary relief." Id.
at 2278 (emphasis added).

The Supreme Court also observed that, "in the immigration
context, 'judicial review' and 'habeas corpus' have historically
distinct meanings." St. Cyr at 2274, citing Heikkila v. Barber,

---

[6] The Supreme Court's very brief opinion in Calcano-Martinez v.
INS, 121 S. Ct. 2268 (2001) effectively adopted the detailed
reasoning of its St. Cyr opinion.

345 U.S. 229 (1953). In St. Cyr the Supreme Court noted its
determination in Heikkila, supra, that "the limited role played
by the courts in habeas corpus proceedings was far narrower than
the judicial review authorized by the APA", and that "'it is the
scope of inquiry on habeas corpus that differentiates' habeas
review from 'judicial review.'" St. Cyr at 2285, citing Heikkila,
345 U.S. at 236.

Indeed, the Supreme Court cited to Mahadeo v. Reno, et al.,
226 F.3d 3, 12 (1st Cir. 2000) for circuit court recognition that
"judicial review" "is a term historically distinct from habeas."
St. Cyr at 2286-87. See e.g. Mahadeo, supra, at 8 fn.6 ("Because
Mahadeo's petition asserts purely statutory interpretation and
constitutional questions, it falls squarely within the ambit of §
2241's jurisdictional grant."). See Goncalves v. Reno, et al.,
144 F.3d 110, 125 (1st Cir. 1998) ("[o]ur holding is narrow and
nothing we say should be taken to suggest that such [28 U.S.C. §
2241] review as is available on habeas is necessarily as broad as
the traditional administrative review available under old § 106.
For example, we are not being asked to 'review[] and reverse[]
the manner in which discretion was exercised' by examining 'the
evidence in the record supporting or undermining the alien's
claim to discretionary relief.'") (emphasis added). See also
Foroglou v. Reno, et al., 241 F.3d 111, 114 (1st Cir. 2001)
(court assuming pre-St. Cyr that "habeas is preserved for those

8

who have no other way to present on direct review constitutional or other legal challenges to a final order of deportation.") (emphasis in original).

It has been further held in the circuit courts that such habeas corpus jurisdiction in the federal courts as may exist to review removal orders does not reach factual or discretionary determinations. In Sol v. INS, 274 F.3d 648 (2d Cir. 2001), the Second Circuit affirmed a district court's dismissal of a habeas corpus petition seeking to challenge a discretionary determination of the INS. The Second Circuit in Sol noted that a petition for habeas corpus may be used to challenge incarceration or orders of deportation as being "in violation of the Constitution or laws or treaties of the United States." Sol at 650. The court also noted, however, that Sol challenged only the IJ and BIA's discretionary calculus as "lack[ing] adequate support in the record." Id. The Second Circuit stated that "[t]his sort of fact-intensive review is vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors." Id.

The Second Circuit observed that several other circuit courts had also come to the conclusion that § 2241 petitions do "not extend to review of discretionary determinations by the INS," citing to Finlay v. INS, 210 F.3d 556, 557 (5th Cir. 2000); Bowrin v. USINS, 194 F.3d 483, 490 (4th Cir. 1999); Catney v.

9

INS, 178 F.3d 190, 195 (3d Cir. 1999). Id. See also Gutierrez-Chavez v. INS, 298 F.3d 824, 827 (9th Cir. 2002) ("[28 U.S.C.] § 2241 does not say that habeas is available to challenge purely discretionary (yet arguably unwise) decisions made by the executive branch that do not involve violations of the Constitution or federal law").

The First Circuit confirmed in Carranza v. INS, 277 F.3d 65, 71 (1st Cir. 2002) its understanding of the Supreme Court's St. Cyr ruling that "[f]ederal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated." See also Reid v. INS, 203 F.Supp.2d 47 (D. Mass. 2002) (2002 WL 824139, *1)(same); Sawan v. Farquharson, No. 02-10959-RGS (D. Mass. 2002) (2002 WL 1465771, *1) (the scope of habeas review of deportation orders "does not include factual or discretionary determinations made by the INS."); Sulaiman v. Attorney General, et al., 212 F.Supp.2d 413, 416 (E.D.Pa. 2002) (2002 WL 1752207) ("scope of review of [deportation orders] is limited to questions of law."). Cf. St. Fort v. Ashcroft, 329 F.3d 191, 202 (1st Cir. 2003) ("[t]he scope of habeas review is not the same as the scope of statutory judicial review in the courts of appeal. . . . if a statute makes an alien eligible to be considered for a certain

10

form of relief, he may raise on habeas the refusal of the agency to even consider him. But he may not challenge the agency's decision to exercise or not exercise its discretion to grant relief.").

This Court therefore has subject matter jurisdiction over "colorable claims of legal error" or "pure questions of law" relating to a final order of removal in the instant habeas petition, assuming review is not otherwise barred.    However, for the reasons set out below, petitioner's legal claims on petition are barred for failure to pursue statutorily prescribed judicial review and, even if his claims weren't so barred, petitioner fails completely to state *any* claim of legal error -- colorable or not -- in the decision of the BIA ordering his removal.

II.   HABEAS CORPUS REVIEW OF PETITIONER'S DEPORTATION ORDER IS UNAVAILABLE BECAUSE HE FAILED TO PURSUE THE PRESCRIBED AND AVAILABLE JUDICIAL REVIEW AT THE FIRST CIRCUIT COURT OF APPEALS.

Because petitioner failed to seek review of the July 8, 1999, BIA order of deportation at the First Circuit Court of Appeals as directed by IIRIRA[7] section 309(c)(4)(C),[8] as he could

---

[7] Illegal Immigration Reform And Immigrant Responsibility Act of 1996, enacted as Division C of the Departments of Commerce, Justice, and State, and the Judiciary Appropriations Act for 1997,   Pub. L. No. 104-208, 110 Stat. 3009, ___ ( enacted Sept. 30, 1996) ("IIRIRA").

[8] IIRIRA section 309(c)(4)(C) provides that a petition for judicial review must be filed "not later than 30 days after the date of the final order of exclusion or deportation", and IIRIRA section 309(c)(4)(D) provides that a petition for judicial review "shall be filed with the court of appeals for the judicial

11

have for challenges to the determination that he was "convicted"
of the April 11, 1984, controlled substance conviction, any
habeas corpus review on that issue is now barred.

The First Circuit Court of Appeals has held that it
continues to have jurisdiction to review even criminally based
deportation or removal orders where the person ordered removed
disputes the fact of a conviction. See generally Maghsoudi v.
INS, 181 F.3d 8, 13 (1st Cir. 1999) (First Circuit recognizing
its jurisdiction to determine whether alien's criminal
convictions precluded review of his immigration proceedings under
IIRIRA transition rule S 309(c)(4)(G)). Cf. Sousa v. INA, 226
F.3d 28, 31 (1st Cir. 2000) ("INA section 242(a)(2)(C) is not a
bar to our considering Sousa's claim that he is not removable as
an aggravated felon.").[9]

The avenue of a petition for judicial review of his
administratively exhausted claim to the First Circuit Court of
Appeals was petitioner's exclusive means of reviewing his removal
order. See Taniguchi v. Schultz, et al., 303 F.3d   950 (9th

_____

circuit in which the administrative proceedings before the
[immigration judge] were completed". The instant petitioner's
deportation hearing was completed before an Immigration Judge in
Boston, Massachusetts, therefore his statutorily prescribed
avenue for judicial review was to the First Circuit Court of
Appeals.
[9] Section 242(a)(2)(C) is the "permanent rules" provision barring
judicial review in the circuit courts. IIRIRA section
309(c)(4)(G) is to the same effect, but applies to cases
commenced prior to September 30, 1996, and which were decided by

Cir. 2002) (habeas corpus jurisdiction under section 2241 is unavailable in immigration case where there is another specific judicial review mechanism provided by statute); Foroglou v. INS, 241 F.3d 111, 115 (1st Cir. 2001) (where an alien "has had full access to this [circuit] court for direct review of orders leading to his deportation . . . . under these circumstances, it is hard to view the habeas petition to the district court as anything other than an attempt, contrary to section 242(g) [8 U.S.C. § 1252(g)], to prevent the Attorney General from 'execut[ing][a] removal order[ ].'"); Arloo v. Ashcroft, 238 F.Supp.2d 381, 383 (D. Mass. 2003) (Ponsor, D.J.), ("habeas review is proper only when there is 'no other way' to present a legal challenge to a deportation order", citing Foroglou v. Reno, 241 F.3d 111, 115 (1st Cir. 2001), and "[t]his [Foroglou] holding was not affected by the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001)"). Cf. Seale v. INS, 323 F.3d 150, 154 (1st Cir. 2003) ("[g]iven the strong arguments on both sides, it is by no means a clear call whether the district court possesses jurisdiction here.")

Moreover, it has been held that failure to pursue and exhaust available review operates as a waiver of habeas review. Mattis v. Reno, et al., 212 F.3d 31, 41 (1st Cir. 2000) ("[t]raditional rules regarding exhaustion and waiver [which]

---

final administrative order on or after October 31, 1996, which

govern on direct review of BIA final orders . . . . [also] hold

on habeas review, which we have suggested is less broad than

direct review."); Groccia v. Reno, et al., 234 F.3d 758, 762 (1st

Cir. 2000) ("Conventional forfeiture rules pertain in habeas

cases."). Cf. Theodoropoulos v. INS, --- F.3d --- (2d Cir. 2004)

(2004 WL 49118, *7) ("we hold that, by its plain language, §

1252(d)'s mandate that unless a petitioner 'has exhausted all

administrative remedies available,' a 'court may [not] review a

final order of removal,' []8 U.S.C. § 1252(d), applies to all

forms of review including habeas corpus.").

By failing to pursue the statutorily prescribed and

available statutory judicial review provided by Congress for

review of his removal order, petitioner is now disentitled from

review of any question relating to the tenability of his April

11, 1984 conviction, or the lawfulness of the BIA's July 8, 1999,

deportation order.  Petitioner therefore fails to demonstrate any

likelihood of success on the merits, and the Court should deny

the stay request.

III. THE PETITION FAILS TO STATE ANY COLORABLE CLAIM OF LEGAL
     ERROR.

Even if habeas review of the July 8, 1999 BIA order is not

barred for failure to pursue available review at the First

Circuit Court of appeals as directed by statute, see IIRIRA

section 309(c)(4)(C), petitioner fails completely to challenge

---

includes the petitioner's administrative case.

any aspect of the BIA's July 8, 1999 deportation order. Instead,
he seeks to attack on Sixth Amendment grounds the underlying
state court conviction from almost 20 years ago, and after he has
already once been deported ( in 1985) upon that basis.

        First, petitioner asserts that he suffered ineffective
assistance of counsel at the time of his April 11, 1984 Rhode
Island conviction for a controlled substance offense.  His claim
is that his criminal defense counsel failed to advise him of the
immigration consequences of his guilty plea to a state controlled
substance charge, resulting in a Sixth Amendment denial.

        However, any such federal collateral challenge to the
underlying 1984 Rhode Island controlled substance conviction is
cognizable only, if at all, in proceedings under 28 U.S.C. §
2254, not in connection with a deportation-related section 2241
habeas proceeding. See Drakes v. INS, 330 F.3d 600 (3rd Cir.
2003) (recognizing a "bar in a section 2241 habeas proceeding
[to] a collateral attack on a prior state conviction where the
conviction serves as a predicate for an order of removal. Drakes
closed the door on review of his state convictions by failing to
timely pursue a remedy through direct appeal, state post-
conviction review, or a habeas petition. The District Court's
decision is affirmed."); Contreras v. Schiltgen, 122 F.3d 30, 31-
32 (9th Cir.1997), rehearing granted, 151 F.3d 906 (9th Cir.1998)
(affirming dismissal of an alien's 28 U.S.C. § 2241 petition and

holding that he "may not collaterally attack his state court conviction in a habeas proceeding against the INS"); Neyor v. INS, 155 F.Supp.2d 127, 137 (D. N.J.2001) ("[prior cases] suggest that this Court should not review the validity of an expired conviction under § 2241 where that conviction serves as a predicate for INS detention").

Moreover, even if petitioner's Sixth Amendment claim that his attorney failed to advise him of the immigration consequences of his 1984 drug conviction were cognizable in the instant case, that claim must fail. It is well-settled that a conviction is final for purposes of immigration law if direct appellate review of the conviction has either been waived or exhausted. White v. INS, 17 F.3d 475, 479 (1st Cir. 1994). A conviction is also final even though "subject to collateral attack", Morales-Alvarado v. INS, 655 F.2d 172, 175 (9th Cir. 1981) (cited in White v. INS, supra, 17 F.3d at 479.

What is more, it is equally well-settled that the possibility or prospect of deportation is merely a collateral consequence of a guilty plea and failure of counsel to advise of the possibility of adverse immigration consequences does not amount to ineffective assistance of counsel. United States v. Gonzalez, 202 F.3d 20, 25 (1st Cir. 2000)("deportation is only a collateral concomitant to criminal conviction [and] failure to advise a defendant of a collateral consequence is a legally

16

insufficient ground for a plea withdrawal.)"; Nunez-Cordero v. United States, 533 F.2d 723 (1st Cir. 1976)(prospect of deportation is a collateral consequence of a guilty plea, and "we are not disposed to treat deportation differently from all the other collateral consequences of conviction of which a defendant may learn."); United States v. Quin, 836 F.2d 654, 655 (1st Cir. 1988) (prospect of deportation "generally regarded as a collateral consequence, only, viz., legally irrelevant, even as to an outright guilty plea."); Traina v. Farquharson, No. 98cv11711-MLW (D. Mass. 1999), slip op. at 11-12 (defendant's failure to be advised of immigration consequences of a guilty plea does not render plea involuntary).

Petitioner's second claim is that this Court should simply invalidate petitioner's deportation based upon petitioner's health condition.  However, petitioner cites no authority for the Court to enjoin petitioner's deportation on this basis, other than the assertion that his deportation would violate the Eighth Amendment proscription against "cruel and unusual punishment."[10] Petition at 6.  And although Congress has provided numerous statutory bases for relief from deportation for qualifying aliens, petitioner -- a former permanent resident who was

---

[10] It is well-established that deportation is a civil action and not a criminal punishment.  INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984) (holding that "[a] deportation action is a purely civil action".); Reno v. American-Arab Anti-Discrimination Committee et al., 525 U.S. 471, 491 (1999)(same).

17

deported in 1985 for a drug conviction, re-entered illegally 5
months later, and has been present in the United States
unlawfully ever since -- is statutorily disqualified for any
relief from deportation as a consequence of his own actions.[11]

In a similar vein, petitioner argues that his deportation
would operate as 10-year bar to his re-entry to the United
States, presenting a hardship to be weighed in the injunction
calculus.  Petition at 5.  However, petitioner's 1984 drug
conviction was already a *permanent* bar to admission to the United
States back in 1985 when petitioner self-deported[12] after entry
of a final order of deportation.[13]  That did not prevent
petitioner's illegal re-entry without inspection to the United
States in March of 1986 just 5 months after his deportation in
October of 1985.  This Court should therefore be slow to hear
petitioner complain in equity about any "hardship" associated
with the pre-existing statutory bar to re-entry.

In addition, to the extent petitioner suggests that he is
not receiving adequate medical care while in custody, Petition at
6, it is established that claims relating to conditions of

---

[11] Without discounting any legitimate health issues relating to
petitioner, the Petition's characterization of his attached
medical records as indicating that deportation to Panama is a
"death sentence", Petition at 5, is a statement unsupported by
those records.
[12] See n.3.
[13] See 8 U.S.C. § 1182(a)(2)(A)(i)(II)(alien convicted of a
controlled substance offense is inadmissible to the United
States).

confinement -- as opposed to the very *existence* of confinement --
are not cognizable in habeas corpus actions. See Heck v.
Humphrey, 512 U.S. 477, 481, (1994); Preiser v. Rodriguez, 411
U.S. 475 (1971); Kamara v. Farquharson, 2 F.Supp.2d 81, 88 (D.
Mass. 1998).

In sum, then, the Court should deny the motion for stay of
deportation because petitioner fails to demonstrate any
likelihood of success on the merits of his claims.  Indeed,
petitioner fails entirely to challenge *any* aspect of the BIA's
July 8, 1999 deportation order, Attachment B, and instead
attempts to circumvent the established statutory procedure for
Federal habeas corpus review of a state court conviction (28
U.S.C. § 2254) -- almost 20 years after the date of conviction --
in the context now of petitioner's imminent second deportation
from the United States.

Accordingly, the Court should deny the motion for stay of
deportation under Arevalo, supra, for failure to demonstrate any
likelihood of success on the merits.

## CONCLUSION

For all the reasons set out above, the Court should deny the
motion for stay of deportation, and deny all other relief sought.

19

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____ .
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114
(617) 565-2415